## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| _____ | ) | |
| TRAMELLA HINTON, as general guardian of SHAWN'QUAVIOUS A'DREZ HINTON, | ) ) ) ) | |
| | ) | |
| Petitioner, | ) | No. 16-1140 |
| | ) | |
| v. | ) | Filed: May 15, 2023 |
| | ) | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | ) ) ) | Re-issued: June 5, 2023[*] |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

### OPINION AND ORDER

Respondent seeks review of a decision awarding Petitioner, Tramella Hinton, entitlement to compensation under the National Vaccine Injury Compensation Program ("Vaccine Act"). Petitioner filed her petition for compensation alleging that her son, Shawn'Quavious A'drez Hinton ("Shawn"), suffered from Guillain-Barré Syndrome ("GBS") caused by an influenza vaccination he received on December 21, 2015. On March 9, 2018, the Special Master issued an Order and Ruling on Facts finding that Petitioner had established adequate proof of vaccination. Subsequently, Respondent filed a Rule 4(c) report stating that he would not defend this case. As a result, on May 29, 2018, the Special Master ruled that Petitioner is entitled to compensation. Respondent now seeks to reverse the Special Master's Order and Ruling on Facts and vacate the Ruling on Entitlement.

---

[*] The Court issued this opinion under seal on May 15, 2023, and directed the parties to file any proposed redactions by May 30, 2023. As the parties do not propose any redactions, the Court reissues the opinion publicly in full.

For the reasons discussed below, the Special Master's finding that Petitioner established adequate proof of vaccination was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Accordingly, the Court **DENIES** Respondent's Motion for Review.


## I.  BACKGROUND

### A.    Factual Background

1.    <u>Shawn's Condition Prior to the Alleged Vaccination</u>

Petitioner is Shawn's mother and natural guardian. Am. Pet. ¶ 2, ECF No. 35. Shawn was born with Down Syndrome on September 24, 1998, and resides with his mother and three younger sisters. Pet'r's Ex. 2 ¶ 2, ECF No. 14-2. According to Petitioner, prior to December 21, 2015, Shawn was a healthy and active young man who attended Tarboro High School in North Carolina. *Id.* ¶ 5. Shawn never complained to her of any pain, weakness, tingling, decreased sensation, or decreased stability. *Id.* ¶ 4. Petitioner further contended that Shawn never had any limitation with balance, gait, mobility, or endurance in standing. *Id.*

From approximately the time of Shawn's birth through 2015, Shawn was a patient of Dr. Gilbert Alligood, an internal medicine and pediatric specialist. Pet'r's Ex. 12 at 7, 11, ECF No. 33-1. On July 10, 2015, Shawn attended an appointment with Dr. Alligood at Vidant Multi-Specialty Clinic ("Vidant") in Tarboro, North Carolina, for behavioral and sleeping problems. Pet'r's Ex. 3 at 179–83, ECF No. 14-3. After a consultation and physical examination, Dr. Alligood prescribed Clonidine and Trazadone. *Id.* at 179. During a follow-up visit on August 3, 2015, Dr. Alligood noted that Shawn was sleeping better but still experiencing behavioral issues, and Dr. Alligood prescribed a refill for the Trazadone. *Id.* at 186–87. Shawn's next appointment

with Dr. Alligood was scheduled for December 21, 2015.  Pet'r's Ex. 9 at 2, ECF No. 15-5; ECF No. 14-2 ¶ 3.

      2.    <u>The Alleged Vaccination</u>

Petitioner alleged that she and Shawn attended the follow-up appointment on December 21, 2015, at which Shawn received an influenza ("flu") vaccination.  ECF No. 14-2 ¶ 3.  She alleged that she was in the exam room with Shawn when Dr. Alligood's nurse administered the flu vaccine in his upper left arm.  *Id.*  Petitioner stated that based on that visit, a refill for Trazodone was sent to her pharmacy.  *Id.*  However, Vidant's records indicated that Shawn was a "no show" for the appointment on December 21, 2015, and that Petitioner called the clinic two days later (December 23, 2015) to obtain the prescription refill for Trazodone.  ECF No. 15-5 at 2; ECF No. 14-3 at 191–92.  Shawn's Medicaid and BlueCross Blue Shield insurance records do not reflect any charges billed for the December 21 appointment.  ECF No. 14-3 at 30–31; Pet'r's Ex. 16, ECF No. 47-2; Pet'r's Ex. 17, ECF No. 47-3.

On April 5, 2016, Petitioner filed a formal request with Vidant requesting that the clinic amend its records to indicate that Shawn received a flu vaccination on December 21, 2015.  ECF No. 14-3 at 237.  Vidant denied Petitioner's request, noting that the record was accurate and complete.  *Id.* at 234–37.  Consequently, Petitioner filed a complaint with the U.S. Department of Health and Human Services, Office of Civil Rights ("OCR") regarding Vidant's failure to amend the records.  *Id.* at 11–12.  On September 23, 2016, OCR notified Petitioner and Vidant that it was closing Petitioner's case without further action.  *Id.* at 12.  Subsequently, on October 26, 2016, Vidant informed OCR that it had investigated Petitioner's request, including reviewing medical records of all patients seen by Dr. Alligood on the day of the alleged visit, and found no basis for amendment of the medical records.  *Id.* at 9–10.

3.     Shawn's Condition After the Alleged Vaccination

On January 14, 2016, Petitioner took Shawn to the urgent care for left ankle pain.  ECF No. 14-3 at 195–96.  The notes section of the urgent care record indicated that Shawn's ankle pain started seven days prior and was constant.  *Id.* at 196.  The notes further stated that Shawn fell on his left ankle three days prior while trying to stand up.  *Id.*  Petitioner contended that in the days and weeks following the urgent care visit, Shawn's leg weakness progressed and became so severe that he lost the ability to stand, maintain his balance, and walk.  ECF No. 14-2 ¶ 8.  On January 29, 2016, Petitioner took Shawn to the Emergency Department for leg pain and difficulty walking.  Pet'r's Ex. 5 at 61, ECF No. 15-1.  The Emergency Department provider noted concern about possible GBS and instructed Shawn to follow-up with his primary care physician.  *Id.* at 64.

On February 1, 2016, Shawn was taken to Vidant in a wheelchair due to his continued inability to walk.  ECF No. 14-3 at 204.  A CT scan of his cervical and lumbar spine revealed some disc bulging and narrowing of the neural exit foramina.  *Id.* at 211.  On February 15, 2016, Shawn was admitted to Vidant Medical Center for weakness of his lower extremities and inability to walk.  Pet'r's Ex. 4 at 58, ECF No. 14-4.  The providers at the medical center examined Shawn and also expressed concerns about GBS.  *Id.*  Notations in Shawn's medical records for February 15, 2016, indicated that he had not received the flu vaccine.  *Id.* at 59 (noting "up to date, did not receive flu vaccination" under "Immunizations"); *id.* at 167 (indicating "No" in the column marked "Influenza Vaccine received since Sept[ember] 1 (Effective Sept[ember] 1 to March 31)" under "Influenza Risk Assessment").  The medical center admitted Shawn for three days and discharged him to pediatric rehabilitation.  *Id.* at 54.

On March 18, 2016, after approximately 30 days of pediatric inpatient rehabilitation, Shawn was discharged with a final diagnosis of GBS and instructed to follow-up with Dr. Kalind

Parashar, his new primary care physician. *Id.* at 224–25, 345. On April 11, 2016, Shawn saw Dr. Parashar for the follow-up visit. ECF No. 14-3 at 219. The medical records from that visit stated that Shawn "has been making significant progress" and "is able to ambulate but with support." *Id.*

Shawn began attending outpatient rehabilitation on April 12, 2016, at Vidant Edgecombe Hospital. Pet'r's Ex. 6 at 312, ECF No. 15-2. The evaluation record from an April 12, 2016, assessment at the rehabilitation hospital noted that Shawn was "coming for skilled therapy after being hospitalized [for] having [GBS]." *Id.* at 21. The record further stated that "[patient] received flu shot on 12/21/2015." *Id.* An April 15, 2016, assessment record also noted that in "December 2015 [patient] received a flu shot." *Id.* at 43. Shawn was discharged from outpatient therapy on July 19, 2016. *Id.* at 312. On October 3, 2016, Shawn saw Dr. Parashar for a follow-up appointment. ECF No. 14-3 at 224. Dr. Parashar noted "no concerns today" and that Shawn attended physical therapy and was recommended for psychotherapy to work on proprioception. *Id.* at 225. Dr. Parashar instructed Shawn to follow-up in six months. *Id.* at 226.

### B.    Procedural Background

On September 14, 2016, Petitioner filed a petition for compensation under the Vaccine Act. *See* Pet., ECF No. 1. Petitioner alleged that Shawn suffered GBS caused by the adverse effects of a flu vaccination he received on December 21, 2015, at Dr. Alligood's office. *Id.* ¶¶ 3, 4. On January 11, 2017, Petitioner obtained subpoenas for Shawn's medical records and filed a first set of medical records. *See* Pet'r's Exs. 1-10, ECF Nos. 14, 15. Petitioner also filed a transcript of a July 27, 2016, recorded telephone conversation with Dr. Alligood in which Dr. Alligood mentioned that he remembered seeing Shawn for a medical appointment but did not remember when. Pet'r's Ex. 12 at 3, ECF No. 15-4; Pet'r's Ex. 12 at 47–48, ECF No. 33-1.

On January 17, 2017, the Special Master granted Petitioner's motion to depose Dr. Alligood regarding Shawn's flu vaccination. *See* Order, ECF No. 23. In his deposition on March 17, 2017, Dr. Alligood stated that December 21, 2015, was the last day he saw patients before he left his employment at Vidant. ECF No. 33-1 at 8, 153. According to Dr. Alligood, he remembered seeing Shawn several times in 2015 but did not remember whether he saw Shawn on December 21, 2015, and did not remember whether Shawn received a flu vaccination. *Id.* at 14, 34. Regarding the check-in process at his office, Dr. Alligood mentioned that it was typical for there to be no formal check-in process for established patients, and that a patient would typically receive an "After-Visit Summary" at the end of the visit. *Id.* at 147–50. Dr. Alligood stated that he is required by law to maintain medical records and there is no situation where he would fail to keep a record. *Id.* at 39–40.

On June 2, 2017, Petitioner filed an amended petition including citations to Dr. Alligood's deposition transcript, as well as medical records that were obtained after filing the original petition. *See* ECF No. 35. In a status conference held on June 14, 2017, the parties stated that proof of vaccination remained an issue. *See* Scheduling Order at 1, ECF No. 36. As a result, the Special Master granted the parties' request to conduct a fact hearing to determine whether Shawn received a flu vaccination. *Id*. The Special Master held the fact hearing on September 8, 2017, in Raleigh, North Carolina. *See* Order and Ruling on Facts at 2, ECF No. 54. During the fact hearing, Petitioner testified that she did not sign an authorization for vaccination on December 21, 2015, and she was not provided a summary of the visit. Tr. at 93, 100, ECF No. 44. Petitioner explained that Shawn's vaccine was administered by a nurse called Lisa, although Dr. Alligood testified at deposition that he did not have a nurse by that name. ECF No. 44 at 12–13, 59–60; ECF No. 33-1 at 92. Petitioner testified that she did not call Vidant on December 23, 2015, to request a refill

of Shawn's Trazadone prescription.  ECF No. 44 at 102–04.  She maintained that Shawn was at the appointment on December 21, 2015, and the refill was renewed at that time.  *Id.*  According to Petitioner, the medical center's immunization history and the influenza risk assessment were inaccurate because she informed the providers during Shawn's hospitalization that he received a flu vaccination in December.  *Id.* at 107–09.  At the hearing, Petitioner also produced her telephone records from December 21, 2015, and testified that she was on the phone for most of the day but not between 2:41 p.m. and 3:09 p.m. because at that time she was with Shawn at Dr. Alligood's office.  *Id.* at 18–19.

After a review of the evidence submitted and the parties' briefs, the Special Master found that Petitioner had established adequate proof of vaccination.  ECF No. 54 at 2.  In her Order and Ruling on Facts, the Special Master first acknowledged that although Shawn was scheduled for an appointment on December 21, 2015, the Vidant records marked him as a "no show," the billing and insurance records did not show a charge for an encounter or vaccination on that date, and two references in Shawn's hospitalization records indicated he did not receive a flu vaccination.  ECF No. 54. at 12.  The Special Master then highlighted that Petitioner's testimony was "highly credible," and that "the actions that Ms. Hinton took and the lengths that she went through to obtain evidence, any evidence that her son was seen on December 21, 2015, are simply not the actions that an individual would take if she did not believe the events occurred as she recalled."  *Id.* at 13.  The Special Master also added that there are "two medical record references indicating that Shawn did receive a flu vaccine prior to the onset of GBS," as well as a statement from Dr. Alligood that implies he saw Shawn in December 2015.  *Id.*  And while noting that Petitioner's telephone records were "certainly not definitive proof that she was at Dr. Alligood's office with Shawn on December 21, 2015," the Special Mater found that they provided "some support" for Petitioner's claim.  *Id.*

On balance, the Special Master concluded that Petitioner "established by preponderant evidence that [Shawn] received an influenza vaccination on December 21, 2015." *Id.* at 14. After Respondent indicated that he would not defend this case, the Special Master issued a summary Ruling on Entitlement in favor of Petitioner on May 29, 2018. Resp't.'s Report at 7, ECF No. 56; Ruling on Entitlement, ECF No. 57.

On December 28, 2022, Respondent filed the instant Motion for Review of the Special Master's decision. Resp't.'s Mot. for Review, ECF No. 266; Resp't.'s Mem. In Support of Mot. for Review, ECF No. 267. Respondent argues that, in finding that Shawn received a vaccine set forth in the Vaccine Injury Table, the Special Master improperly ignored contemporaneous medical records and relied instead on Petitioner's uncorroborated statements. ECF No. 267 at 5. According to Respondent, Petitioner's evidence was as a matter of law insufficient to support a proof of vaccination finding. *Id.* at 5. Respondent further argues that the Special Master's finding was arbitrary and capricious considering the overwhelming weight of evidence demonstrating that no appointment or vaccination occurred on December 21, 2015. *Id.* at 6. On January 30, 2023, Petitioner responded to Respondent's motion. Pet'r's Resp. to Resp't.'s Mot. for Review, ECF No. 270. Petitioner argues that she established by a preponderance of evidence that Shawn received a flu vaccination on December 21, 2015. *Id.* at 6. According to Petitioner, the Special Master's consistent finding was neither arbitrary and capricious nor contrary to the law. *Id.* at 5.

## II.  LEGAL STANDARD

This Court has jurisdiction to review a special master's decision upon the timely request of either party. 42 U.S.C. § 300aa-12(e)(2). Under the Vaccine Act, a court deciding a motion for review may:

> (A)   uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,

8

(B)  set aside any findings of fact or conclusion of law of the special master found
to be arbitrary, capricious, an abuse of discretion, or otherwise not in
accordance with law and issue its own findings of fact and conclusions of law,
or

(C)  remand the petition to the special master for further action in accordance with
the court's direction.

*Id.* §§ 300aa-12(e)(2)(A)–(C).

In conducting its review, the Court employs "a highly deferential standard." *Hines v. Sec'y of Health & Hum. Servs.*, 940 F.2d 1518, 1528 (Fed. Cir. 1991). "If the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." *Id.*; *see Hayman v. United States*, No. 02-725V, 2005 WL 6124101, at *2 (Fed. Cl. May 9, 2005) (decision should stand so long as the special master "consider[ed] all the relevant factors, ma[de] no clear error in judgment, and articulate[d] a rational connection between the facts found and the choice made").

This "great deference" extends in particular to a special master's findings of fact, which are reviewed under the arbitrary and capricious standard. *Munn v. Sec'y of Health & Hum. Servs.*, 970 F.2d 863, 870 & n.10 (Fed. Cir. 1992). On a motion for review, it is not the Court's role "to reweigh the factual evidence;" rather, "the probative value of the evidence [and] the credibility of the witnesses . . . are all within the purview" of the special master as the factfinder. *Id.* at 871; *see Doe 93 v. Sec'y of Health & Hum. Servs.*, 98 Fed. Cl. 553, 565 (2011) (citing *Lampe v. Sec'y of Health & Hum. Servs.*, 219 F.3d 1357, 1360 (Fed. Cir. 2000)). Accordingly, the Court should not substitute its judgment for that of the special master even though it may have reached a different conclusion. *Johnson v. Sec'y of Health & Hum. Servs.*, 33 Fed. Cl. 712, 720 (1995). This deference notwithstanding, when the matter for review is whether the special master's decision was in accordance with law—*i.e.*, when a question of law is at issue—the court reviews

the decision de novo. *Althen v. Sec'y of Health & Hum. Servs.*, 418 F.3d 1274, 1277–78 (Fed. Cir. 2005).

### III.  DISCUSSION

Respondent's motion raises two objections to the Special Master's decision.  Specifically, Respondent alleges that: (1) the Special Master erred as a matter of law in finding preponderant evidence that Shawn received a flu vaccination on December 21, 2015; and (2) the Special Master's finding was, in any event, arbitrary and capricious.  Having considered the parties' arguments, as well as the record in this case, the Court rejects Respondent's objections and declines to set aside the Special Master's decision.

### A.   The Special Master Did Not Err as a Matter of Law in Finding Preponderant Evidence that Shawn Received a Flu Vaccination on December 21, 2015.

Respondent argues that the Special Master erred in finding preponderant evidence that Shawn received a flu vaccination on December 21, 2015, because Petitioner did not submit corroborating documentary evidence of vaccination.  ECF No. 267 at 12.  Respondent contends that the only documentary evidence offered to substantiate proof of vaccination—*i.e.*, Petitioner's phone records and two non-contemporaneous medical records—do not demonstrate that Shawn received the vaccine and, with respect to the latter records, simply documented Petitioner's uncorroborated statements to medical providers that were made after she retained legal counsel for the purposes of the present litigation.  *Id.* at 6.  Respondent further argues that the fact that contemporaneous medical records are unavailable does not eliminate the statutory requirement that the claim be substantiated.  *Id.* at 13.

The Court finds that the Special Master did not err.  When proving eligibility for compensation under the Vaccine Act, a petitioner must establish by a preponderance of evidence that the injured person received a vaccine set forth in the Vaccine Injury Table.  *See* 42 U.S.C. §

10

300aa-13(a)(1)(A); *id.* § 300aa-11(c)(1)(A); *see also Matthews v. Sec'y of Health & Hum. Servs.*, 157 Fed. Cl. 777, 785 (2021).  A preponderance of evidence standard requires "the trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence."  *Moberly ex rel. Moberly v. Sec'y of Health & Hum. Servs.*, 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (alteration in original) (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993)).  The Act directs the special master to base her eligibility finding on "the record as a whole" and prohibits "such a finding based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion."  42 U.S.C. § 300aa-13(a)(1).[1]

These requirements are reflected in the statutory provision governing the content of a petition for compensation.  Pursuant to the Act, a petition must contain "an affidavit, and supporting documentation, demonstrating that the [injured] person," among other things, "received a vaccine set forth in the Vaccine Injury Table," *id.* § 300aa-11(c)(1)(A), as well as "vaccination records associated with the vaccine allegedly causing the injury," among other records, *id.* § 300aa-11(c)(2).  However, if any required records "are unavailable to the petitioner," the petition may identify such records and state "the reasons for their unavailability."  *Id.* § 300aa-11(c)(3).  All of these statutory requirements are similarly reflected in the Court's Vaccine Rules.  *See* R. 2(c)(1)(A)(ii), (c)(2)(A)(i), (c)(2)(B)(i)–(ii), Rules of the U.S. Court of Federal Claims, app. B ("Vaccine Rules").

---

[1] The Act defines "record" as "the record established by the special masters of the United States Court of Federal Claims in a proceeding on a petition filed under section 300aa-11 of this title."  42 U.S.C. § 300aa-13(c).

Applying the evidentiary framework provided in the Act and the Vaccine Rules, courts have long held that "contemporaneous, documentary proof of a vaccination"—although the best of evidence—is not necessary to establish proof of vaccination under the preponderance standard. *Centmehaiey v. Sec'y of Health & Hum. Servs.*, 32 Fed. Cl. 612, 621, *aff'd*, 73 F.3d 381 (Table) (Fed. Cir. 1995) (per curiam) (citing *Brown v. Sec'y of Health & Hum. Servs.*, 18 Cl. Ct. 834, 839 (1989), *rev'd on other grounds,* 920 F.2d 918 (1990)).  Other evidence may include lay witness testimony supported by "corroborating evidence, either medical or otherwise." *Epstein v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 467, 478 (1996).  As such, petitioners have presented sufficient evidence on which to base a finding of vaccination where, in addition to their own testimony, they proffered an entry from a personal calendar and billing records, *Brown*, 18 Cl. Ct. at 840; an entry in a baby book, *Taylor v. Sec'y of Health & Hum. Servs.*, No. 90-857V, 1991 WL 115031, at *3 (Cl. Ct. Spec. Mstr. June 12, 1991); and references in more recent medical records referring back to the vaccination, *Wonish v. Sec'y of Health & Hum. Servs.*, No. 90-667V, 1991 WL 83959, at *4 (Cl. Ct. Spec. Mstr. May 6, 1991).

Here, the record included Petitioner's affidavit and live testimony about personally witnessing Shawn receive the flu vaccine on December 21, 2015, along with the following corroborating evidence: Petitioner's phone records from December 21, 2015, deposition testimony from and recorded telephone conversations with Dr. Alligood, and medical records from April 2016 that post-date the alleged vaccination date. *See* ECF No. 44 at 12–13, 18–19; ECF No. 33-1 at 47–48; ECF No. 15-4 at 3; ECF No. 15-2 at 21, 43; ECF No. 54 at 14.  The record also included ample explanation about the absence of contemporaneous records documenting the fact of Shawn's vaccination and the extensive efforts Petitioner undertook to obtain such documentation. *See* ECF No. 15-4 at 3; ECF No. 14-3 at 11–12; ECF No. 44 at 93, 100.

In her Order and Ruling on Facts, the Special Master found Petitioner's testimony "highly credible," highlighting the actions she took and the lengths to which she went to obtain evidence, as well as how Petitioner explained with clear and specific details the events of December 21, 2015.  ECF No. 54 at 13.  The Special Master found this testimony was corroborated, albeit "barely," by the circumstantial evidence.  *Id.*  This included the phone records, which the Special Master found "provide some support for [Petitioner's] claim," even though they are "certainly not definitive proof that [Petitioner] was at Dr. Alligood's office with Shawn on December 21, 2015." *Id.*  It also included the two later medical records from Shawn's outpatient rehabilitation reporting that Shawn received a flu vaccination: an April 12, 2016, rehabilitation evaluation and an April 15, 2016, physical therapy note.  *Id.* at 5, 13.  The Special Master also credited Dr. Alligood's recorded statement implying that he saw Shawn right before the doctor stopped seeing patients at Vivant on December 21, 2015, which was undisputedly the date of Shawn's scheduled follow-up appointment.  *Id.* at 13.  Although the Special Master based her finding primarily on Petitioner's "highly credible" testimony, ECF No. 54 at 12, the Special Master did not rely on it alone but rather on the record as a whole and specifically discussed supporting documentation and other evidence that indicated Shawn attended his December 21 appointment and received a flu vaccination.  *Id.* at 12; *see id.* at 13–14.

Respondent contends that none of this evidence corroborates Petitioner's testimony. Respondent argues that the two medical records the Special Master referenced in support of her finding are non-contemporaneous medical records that simply document Petitioner's uncorroborated statements to medical providers.  ECF No. 267 at 6.  But neither the statute nor the case law provides that only medical records containing independent proof of vaccination are legally sufficient to support an eligibility finding.  To the contrary, the Federal Circuit has

explained the importance of medical record evidence to eligibility determinations in the Vaccine

Program, specifically acknowledging that they contain information both "*supplied to or by* health

professionals to facilitate diagnosis and treatment." *Cucuras v. Sec'y of Health & Hum. Servs.*,

993 F.2d 1525, 1528 (Fed. Cir. 1993) (emphasis added); *see James-Cornelius on Behalf of E. J. v.

Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (recognizing that "medical

records may indeed serve as important corroborating evidence for evaluating testimony's

credibility" in a vaccine case, even though they would likely be based on the statements of the

petitioner or his parents).  As such, special masters have found notations in medical records to

corroborate proof of vaccination even where the information was reported by the petitioner or

other individual with knowledge.  *See, e.g.*, *Riddick v. Sec'y of Health & Hum. Servs.*, No. 99-

643V, 2006 WL 2990220, at *10 (Fed. Cl. Spec. Mstr. Oct. 4, 2006); *Groht v. Sec'y of Health &

Hum. Servs.*, No. 00-287V, 2006 WL 3342222, at *2 (Fed. Cl. Spec. Mstr. Oct. 30, 2006); *Berry

v. Sec'y of Health & Hum. Servs.*, No. 90-339V, 1990 WL 293448, at *3 (Cl. Ct. Spec. Mstr. Nov.

15, 1990).  Indeed, relying on *Groht*, Respondent suggests that a single reference to the vaccination

in a contemporaneous medical record based on a petitioner's statement would be legally sufficient

under § 300aa-11(c)(1).[2]  ECF No. 267 at 14 (quoting *Groht*, 2006 WL 3342222, at *2).  The

difference here is the timing of the statements documented in the records.

As such, Respondent's attack on the medical records more aptly constitutes a disagreement

with the weight the Special Master gave to such evidence.  *See* ECF No. 267 at 16 (arguing that

---

[2] The courts in *Brown* and *Taylor*, cases Respondent also relies on, similarly found that
statements made by the petitioners' mothers in a personal calendar and a baby book, respectively,
corroborated their own testimony.  *Brown*, 18 Cl. Ct. at 840 (finding the entry "Conway to Dr.
Lee—time 10:45" in mother's calendar corroborated her testimony that the petitioner had a
medical appointment on that date); *Taylor*, 1991 WL 115031, at *3 (finding that baby book
substantiated mother's claim that a Table vaccine was administered on a specific date).

the medical records lack "reliability" because, among other things, they were created months after the alleged vaccination, after Petitioner retained counsel). The same can be said for Respondent's challenge to the phone records. *Id.* (arguing that "there are many reasons petitioner might not have been using her phone for a period of time on any given day"). According to Respondent, the circumstantial evidence found to corroborate Petitioner's testimony was "far from persuasive." *Id.* at 15. Whether Petitioner produced evidence that, as a whole, was *sufficiently* corroborative implicates the Special Master's discretion as the factfinder; it does not raise the legal question of whether the testimony was uncorroborated at all. *See Abruzzo v. Sec'y of Health & Hum. Servs.*, No. 02-0857V, 2007 WL 5161746, at *2 (Fed. Cl. Feb. 13, 2007) (describing a petitioner's burden of production under § 300aa-11(c) and burden of persuasion under § 300aa-13(a)(1)(A)); *see also Matthews*, 157 Fed. Cl. at 788–89 (citing *Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993)) ("In weighing the evidence pertaining to proof of vaccination, the Special Master has discretion to determine the relative weight of the evidence presented, including contemporaneous medical records and oral testimony."). Reweighing the sufficiency of the factual evidence falls outside this Court's role. *See Munn*, 970 F.2d at 871.

Accordingly, considering the statutory requirements and case law demonstrating the myriad ways a petitioner may corroborate her testimony to prove the fact of vaccination, the Court finds that the Special Master did not err as a matter of law in evaluating the evidence as a whole and applying the preponderance standard to conclude Petitioner had established that Shawn received a flu vaccination on December 21, 2015.

### B.   The Special Master's Finding that Shawn Received a Flu Vaccination on December 21, 2015, Was Not Arbitrary or Capricious.

Respondent argues that regardless of whether the Special Master erred as a matter of law, her factual finding was arbitrary and capricious in light of the overwhelming weight of evidence

demonstrating that no appointment or vaccination occurred on December 21, 2015.  ECF No. 267 at 6, 18.  Specifically, Respondent emphasizes that the records at Dr. Alligood's office recorded Shawn as a "no show" for his appointment, billing records and insurance records from BlueCross BlueShield and Medicaid did not indicate an encounter or vaccination on December 21, 2015, records from Shawn's subsequent hospitalization in February 2016 twice noted that he did not recently receive a flu vaccination, and the investigation by Vidant did not find any evidence that an appointment or vaccination occurred on December 21, 2015.  *Id.* at 6.  Respondent further argues that the Special Master provided no explanation of how she resolved conflicts in the evidence.  *Id.* at 18.  According to Respondent, by crediting Petitioner's testimony, the Special Master necessarily discredited numerous instances of contradictory evidence indicating that a vaccination was not administered as claimed.  *Id.* at 18–19.  Respondent argues that the Special Master's failure to explain why hospital records showing that Shawn did not receive any flu vaccination were entitled to less weight than Petitioner's uncorroborated testimony was arbitrary and capricious.  *Id.* at 20.

The Court finds that the Special Master's finding was not arbitrary or capricious.  Applying the requisite "highly deferential" standard of review, the Special Master's decision shows that she "considered the relevant evidence of record, [drew] plausible inferences, and articulated a rational basis for the decision."  *Hines*, 940 F.2d at 1528.  Here, there is no dispute that the Special Master considered all the relevant evidence. She evaluated the credibility and persuasiveness of Petitioner's testimony in addition to the "affidavits, witness statements, [ ]deposition testimony," medical records, and other documents in the record.  ECF No. 54 at 14; *see id.* at 2–11.  She also specifically considered and weighed conflicting evidence and the absence of evidence.  *See id.* at 3 (discussing Dr. Alligood's records and the absence of other records), 3–5 (February 2016

hospital records and Vidant investigation letter), 11 (cross-examination topics).  In doing so, the

Special Master acknowledged both weaknesses in the evidence supporting Petitioner's claim and

concerns raised by evidence that tended to undermine it.  *See id.* at 13 & n.5.

Based on a thorough evaluation of the evidence, the Special Master also rationally

explained the reasons underlying her decision.  Specifically, the Special Master noted that:

> [T]he actions that Ms. Hinton took and the lengths that she went through to obtain
> evidence, any evidence that her son was seen on December 21, 2015, are simply
> not the actions that an individual would take if she did not believe the events
> occurred as she recalled.  In her affidavit, Ms. Hinton details each of the people she
> contacted and the actions she took to establish that Shawn was seen by Dr. Alligood
> on December 21, 2015 and that he received a flu vaccination on that day, including:
> contacting and appearing in person at Vidant to obtain a copy of Shawn's vaccine
> record and any records of his visit on December 21, 2015; filing a formal request
> for an amendment of Shawn's records with Vidant and understanding that a formal
> investigation would take place into her request; calling and attempting to see Dr.
> Alligood on many, many instances (Dr. Alligood testified that Ms. Hinton called
> his office 10-15 times a day; *see* Pet. Ex. 12 at 42); filing a complaint with HIPAA
> to report a violation of Vidant's record-keeping practices; filing a formal complaint
> with the Office of Civil Rights; contacting her private insurance company and
> Medicaid to obtain any documentation regarding the December 21, 2015 visit, and
> even resorting to recording her telephone conversations with Dr. Alligood. *See* Pet.
> Ex. 10.  These are actions of a dedicated mother demanding for what she believed
> was an accurate record for her child.  While Ms. Hinton's telephone records from
> December 21, 2015, are certainly not definitive proof that she was at Dr. Alligood's
> office with Shawn on December 21, 2015, the records do provide some support for
> her claim.  In addition, there are two medical record references indicating that
> Shawn did receive a flu vaccine prior to his onset of GBS.  Pet. Ex. 6 at 21, 42.
>
> . . . Dr. Alligood does seem to imply that he saw Shawn in late 2015 before he left
> Vidant in December 2015; Pet. Ex. 8.  There is no dispute that Shawn had an
> appointment scheduled for December 21, 2015 at 2:30 p.m.  Ms. Hinton testified
> that she was not working on that date and that Shawn was out of school . . . for his
> Christmas break.  Ms. Hinton described, in detail, the events of the morning of
> December 21, 2015 leading up to Shawn's appointment, clear details of the
> appointment . . . , including specifics of her conversations with Dr. Alligood and
> specific information about the administration of the flu vaccine by Dr. Alligood's
> nurse to Shawn.

*Id.* at 13.  These findings bear on the Special Master's assessment of the Petitioner's credibility

and the reliability of her testimony, as well as the weight of other evidence supporting her

testimony.   As the factfinder, the Special Master was "entitled—indeed, expected—to make determinations as to the reliability of the evidence presented to [her] and . . . as to the credibility of the persons presenting that evidence."  *See Porter v. Sec'y of Health & Hum. Servs.*, 663 F.3d 1242, 1250–51 (Fed. Cir. 2011) (citing *Moberly*, 592 F.3d at 1326).  On review, this Court does not assess the credibility of witnesses or the probative value of evidence, nor does it assess whether the Special Master properly evaluated the evidence.  *See Munn*, 970 F.2d at 870.  Since the Special Master's decision was based on evidence in the record that supports her findings and that was not wholly implausible, the Court finds that the decision was not arbitrary or capricious.  *See Lampe*, 219 F.3d at 1363.

Respondent, however, argues that it was arbitrary and capricious for the Special Master to not explain (1) how she resolved conflicts between Petitioner's testimony and contradictory evidence indicating that a vaccination was not administered to Shawn and (2) why hospital records that indicated Shawn did not receive any flu vaccination were entitled to less weight than Petitioner's testimony.  ECF No. 267 at 18–20.  Respondent fails to cite authority supporting either proposition.  As Respondent correctly notes, Vaccine Rule 3(b)(2) charges the Special Master with the responsibility of "affording each party a full and fair opportunity to present its case and creating a record sufficient to allow review of the special master's decision."  Both obligations were met in this case.  The Special Master's decision details the extent of the record created below including a fact hearing, sets forth specific factual findings based on her review of the evidence with citations to the record, and articulates a rational connection between the facts found and the decision made.

Respondent's disagreement with the way the Special Master weighed and resolved conflicting evidence is not a basis for the Court to find the decision arbitrary or capricious.  The Court agrees with Respondent that crediting Petitioner's testimony and corroborating evidence to

support a finding that Shawn more likely than not received the flu vaccine implies the Special Master necessarily found the documentation (and lack of documentation) related to the December 21, 2015, office visit and the vaccine-related notations in the February 2016 hospital records less likely to be accurate and/or complete.   But, contrary to Respondent's suggestion, there is no presumption in vaccine cases that "medical records are 'accurate and complete.'"  *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1382 (Fed. Cir. 2021).  And although the Federal Circuit has recognized the "unremarkable proposition that it [is] not erroneous to give greater weight to contemporaneous medical records than to later, contradictory testimony," it has not held that crediting credible and corroborated testimony over conflicting or absent contemporaneous records is per se arbitrary and capricious.  *Id.* (discussing *Cucuras*, 993 F.2d at 1527–28).  Nor does Respondent cite any case holding that, to meet her burden of persuasion, the petitioner must demonstrate what caused the conflicting contemporaneous medical records to be inaccurate or incomplete.  The Court doubts those reasons would be ascertainable, let alone provable, in the vast majority of cases.  *See id.* at 1383 (noting various reasons records may be inaccurate or complete).

Here, the Special Master acknowledged that there were "questionable occurrences in this case" involving the contemporaneous medical records.  ECF No. 54 at 13.  Nonetheless, "in reviewing the facts of this case, the testimony and actions of Ms. Hinton, and the circumstantial evidence," she found as a whole "that the evidence presented by Ms. Hinton satisfied the preponderance of the evidence standard" to support a finding that Shawn attended his December 21, 2015, medical appointment and received the flu vaccine.  *Id.*  Under its "uniquely deferential" review, the Court is not free to "second guess the Special Master[']s fact-intensive conclusions."  *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993).  Consequently, the Court sees no reason to disturb the Special Master's determination.

## IV. CONCLUSION

For these reasons, the Court **DENIES** Respondent's Motion for Review.  Pursuant to Vaccine Rule 30(a), the Clerk is directed to enter judgment accordingly.

This opinion and order will be unsealed in its entirety after May 30, 2023, unless pursuant to Vaccine Rule 18(b) the parties specifically identify protected and/or privileged information subject to redaction prior to that date.  Any objecting party must submit a proposed redacted version of the decision and provide the reason(s) supporting the party's request for redaction.

**SO ORDERED.**

Dated: May 15, 2023                    */s/ Kathryn C. Davis*
                                                     KATHRYN C. DAVIS
                                                     Judge